No. 30,146.

The U. S. Wind Engine and Pump Company, *Appellant,* v. Scott Montgomery, Charles A. Meilert and N. F. Strachan, Partners as The Meilert Construction Company, and The City of Ellinwood, *Appellees.*

(5 P. 2d 1112.)

Opinion filed December 12, 1931.

*R. C. Russell,* of Great Bend, and *Kenneth W. Tapp,* of Kansas City, Mo., for the appellant.

*Clyde Allphin,* of Great Bend, *Dempster O. Potts* and *Dallas M. Potts,* both of Wichita, for the appellees.

The opinion of the court was delivered by

Sloan, J.: This action was brought for the purpose of foreclosing a mechanic's lien against the real estate owned by the city of Ellinwood. The defendant prevailed, and the plaintiff appeals.

The appellant is a corporation with its principal place of business at Batavia, Ill., with a branch office at Kansas City, Mo., and, as jobbers, handle the Pomona pump, which is the pump under consideration in this case. Charles A. Meilert transacted his business under the name of the Meilert Construction Company and as such was engaged in the business of drilling and equipping water wells. Some time prior to April 23, 1930, the city of Ellinwood, a city of the third class, decided to purchase a pump to be used in the water wells of the city. About April 23, 1930, at a meeting of the mayor and council of the appellee, Roy W. Butters, general manager for the appellant, N. F. Strachan, representative of the Meilert Construction Company, and Scott Montgomery appeared before the mayor and council for the purpose of inducing the city to contract for the pump and its installation. Mr. Butters was interested in

the sale of the pump to the city, through the Meilert Construction Company, and Montgomery was interested in the installation of the pump and equipment. A proposition was made under date of April 23, 1930, to the city, which is as follows:

*"To Honorable Mayor and Council, Ellinwood, Kan.:*

"GENTLEMEN—We propose to furnish all material and install complete for the city of Ellinwood, Kan., a Pomona turbine pump of 150-gallon-per-minute capacity, equipped with 15-horsepower motor, and all necessary starting equipment, the pump to have a setting of 60 feet with 10 feet of suction pipe, for the sum of eighteen hundred fifty and no-100 dollars ($1,850).

"Included in the above price, we agree to furnish 50 feet, more or less, of 40-pounds 10-inch well casing, and install the same in your well, with necessary packer, and to fill the space between the existing 12-inch casing and the new 10-inch casing with concrete, and to clean out said well before installing pump.

"We also agree to install and furnish all necessary connections and fittings, including one check valve to connect the pump with the existing gate valve in the pump pit.

"Said consideration to be paid upon completion of said installation, to the satisfaction of the governing body of said city.

"Respectfully submitted,
"S. MONTGOMERY, MEILERT CONST. Co.,
"By N. F. STRACHAN."

This proposition was subsequently accepted by the city and constitutes the contract which is the basis of this action. On July 3, 1930, the appellant filed with the clerk of the district court a mechanic's lien statement, claiming a lien on the property of the city as a subcontractor of the Meilert Construction Company in the amount of $1,115.93, for material furnished, which included the pump and equipment. On the same day the appellant mailed a notice to the mayor of the appellee advising him of the filing of the mechanic's lien, the amount thereof, and containing a description of the property on which the lien was claimed. This action to foreclose the lien was filed a few days after the filing of the mechanic's lien statement. The petition contained the usual allegations for the establishment and foreclosure of a subcontractor's lien. The answer alleged as a defense that the claim had been fully paid. The case was tried to the court, without the aid of a jury.

The evidence tends to show that the installation of the equipment and pump was completed some time prior to June 10, 1930, and on that date was accepted by the city as a full compliance with the contract. The city issued a voucher or warrant to Scott Mont-

gomery in the amount of $1,789.93, in full payment for the pump and the service of installation. A few days thereafter Scott Montgomery paid the Meilert Construction Company the full amount due them for the equipment and pump. The construction company failed to pay the appellant. It was agreed as a fact—

". . . That at the time of the entering into this contract between the city of Ellinwood and Scott Montgomery and the Meilert Construction Company, that the pump in question, upon which this action is now being tried, was sold to the Meilert Construction Company, and not to Scott Montgomery."

The evidence further showed that Roy W. Butters, the appellant's manager at the time the contract was let, advised the mayor and council of the city to go ahead and deal with the Meilert Construction Company; that it was all the same whether they did business with him or the Meilert Construction Company. When the contract was closed Butters wired the factory to ship the pump direct to the city, and it was charged on the books of the appellant to the Meilert Construction Company. Montgomery testified:

"That the only conversation he had with Mr. Butters concerning the contract was the night of the letting; that in this conversation Mr. Butters said that the Meilert Construction Company were fine builders and good contractors; that the conversation further referred to the letting of the contract and that he (Montgomery) would very likely receive the contract that night and that he would go ahead and complete the job and, as Strachan wouldn't be there to do any of the work, that he (Montgomery) would make settlement and would settle with the Meilert Construction Company; and Mr. Butters replied that that would be fine, and that was all of the conversation."

A letter addressed to the Meilert Construction Company by the plaintiff under date of June 13, 1930, is in part as follows:

"We have a communication to-day from Mr. Scott Montgomery, dated June 11, in which he advises the pump at Ellinwood has been installed and runs perfectly and that they are all very well pleased with it. He states he left his bill and the council promised to take action on it at their next meeting.

"This, of course, is none of our affair, and we hope you will not so accept it, but we were wondering if Mr. Montgomery submitted the bill or whether you submitted it. We should think the latter would be the case, inasmuch as the contract was let to you.

"We are merely mentioning this in passing and hope you will not mention to Mr. Montgomery that we even thought of it."

On June 16 the plaintiff addressed another letter to the Meilert Construction Company, which is in part as follows:

"We have your notation on the bottom of our letter of June 13, regarding payment of the Ellinwood account, and note you made this bill and forwarded it to Mr. Montgomery for handling. . . .

"We note you expect to have a check by Tuesday in settlement of this. This calls to mind the fact that your account with us is somewhat past due and I hope it will be possible for you to send us a remittance in full. . . ."

The court on this evidence found generally for the appellee and against the appellant, and entered judgment for the appellee for costs.

The appellant contends that the court erred in refusing to foreclose the lien, and the judgment is not sustained by the evidence.

We glean from the record that it was urged by the appellee in the court below that the case of *Indiana Limestone Co. v. Cuthbert*, 126 Kan. 262, 267 Pac. 983, was controlling in this case and under that decision the appellant's lien did not attach to the appellee's property as a matter of law. The court took the question under advisement and from the opinion filed in the case appears to have adopted appellee's theory, holding the Cuthbert case applicable to the case under consideration, and that the appellant was not a subcontractor or materialman. In this we think the court was in error. In the Cuthbert case Scott Brothers Construction Company entered into a contract with the board of education for the erection of a school building. They in turn entered into a contract with J. R. Cuthbert to supply the necessary stone, cut ready to be placed in the building. Cuthbert purchased the stone from the Indiana Limestone Company. Cuthbert was a materialman under contract with the original contractor. The Indiana Limestone Company had no dealing with the original contractor. The court held that Cuthbert had a claim for a lien, but this right did not extend to the limestone company. In the case under consideration Montgomery and the Meilert Construction Company were the original contractors. They signed the proposal which was accepted by the city and were bound to perform the contract. The construction company, one of the original contractors, contracted with the appellant to furnish the material; the appellant thereby became the materialman and stood in the same position as Cuthbert in the case cited.

This court has repeatedly held that if the trial court reached a correct conclusion we are not concerned with the course of judicial reasoning announced by the trial court in arriving at its decision. (*Saylor v. Crooker*, 97 Kan. 624, 156 Pac. 737; *Quinton v. Kendall*, 122 Kan. 814, 253 Pac. 600; *Bauman v. Hoffman*, 125 Kan. 62, 262 Pac. 545.)

The appellee in its answer alleged that the claim for material and

labor had been fully paid. Estoppel is argued in the brief, but is not found in the pleadings. If the evidence is sufficient to support the court's general finding, which would include the payment of the claim, the judgment should be affirmed. The evidence on this question is that Scott Montgomery paid the Meilert Construction Company for the material, and, if the Meilert Construction Company was authorized to accept this money for the appellant, the indebtedness was paid. The testimony is that the agent and general manager of the appellant advised the mayor and council to go ahead and deal with the Meilert Construction Company; that it would be all the same whether they did business with him or the construction company, and when told by Montgomery that he would settle with the Meilert Construction Company it received his approval. Again we glean from the correspondence between the Meilert Construction Company and the appellant that the appellant expected the Meilert Construction Company to submit the bill to the city rather than Montgomery, but afterwards approved their forwarding the bill to Montgomery. All these facts, when taken together, indicate that the appellant made the Meilert Construction Company its agent for the purpose of handling this transaction. In any event, we think the evidence was sufficient to support the general finding of the court in favor of the appellee. This was a question of fact to be determined from all of the evidence by the court, and if there is any evidence to support the general finding this court is bound thereby. (*Bauman v. Hoffman,* 125 Kan. 62, 262 Pac. 545; *Cox v. Gibson,* 125 Kan. 76, 262 Pac. 1030.)

The judgment of the district court is affirmed.